UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DONTANEOUS SALLY,  )
   Plaintiff,  )
       )
vs.  )      No. 17-1378
       )
JUSTIN HAMMERS, et. al.,  )
   Defendants  )

SUMMARY JUDGMENT ORDER

This cause is before the Court for consideration of Defendant's motion for summary judgment on the issue of exhaustion of administrative remedies. [23].

Plaintiff has one claim alleging Defendant Illinois River Correctional Center Officer Paula Wolfe used excessive force on March 22, 2017 when she intentionally and maliciously slammed a prison door on Plaintiff's hand causing injury.

I. FACTS

The Illinois Department of Corrections (IDOC) has an established grievance process. *See* 20 Ill. Admin. Code §§ 504.800 *et seq.* An inmate must first submit a written grievance on the appropriate form to their counselor. 20 Ill. Admin. Code § 504.810(a). The grievance must be submitted within 60 days of the alleged incident or problem. Nonetheless, if the inmate can demonstrate "good cause' for failing to meet this deadline, the grievance will still be considered. 20 Ill. Admin. Code § 504.810(a).

The grievance officer must review the grievance and report his or her findings and recommendations to the Chief Administrative Officer or Warden within two months of receipt "when reasonably feasible under the circumstances." 20 Ill. Admin.

1

Code § 504.830(e). The Warden will then review the recommendations and advise the inmate of the Warden's final decision in writing.

If the inmate is not satisfied with the Warden's response, he or she can file a written appeal to the IDOC Director through the Administrative Review Board. The appeal must be filed within 30 days of the Warden's decision. 20 Ill. Admin. Code § 504.850(a). The Director shall then review the findings and recommendations of the board and make a final determination within six month after receipt of the grievance "where reasonably feasible under the circumstances." 20 Ill. Admin. Code § 504.850(f). When an inmate has received a copy of the Director's decision, the grievance procedure is complete.

The Administrative Review Board (ARB) received four grievances from the Plaintiff which made reference to the alleged use of excessive force on March 22, 2017. All of the grievances were filed using the traditional, non-emergency grievance procedures. (Def. Mot., Ben. Aff., p. 3-4).

Plaintiff first submitted a grievance dated April 27, 2017 complaining about the Defendant slamming the door on his hand. The grievance officer denied Plaintiff's grievance on July 19, 2017 finding Defendant Wolfe was not working in Plaintiff's housing unit on the day of the incident. (Def. Ex. A1., p. 2-3). The Warden signed off on the denial of the grievance on August 4, 2017. (Def. Ex. A1, p. 3). The ARB received the grievance on December 18, 2017. The board denied the grievance as untimely because inmates are required to file their appeals within 30 days of the Warden's signature, and Plaintiff had provided no explanation for the three month delay. (Def. Ex. A1, p. 4).

Plaintiff's second grievance is dated May 31, 2017, but Plaintiff sent his grievance directly to the ARB which received it on June 8, 2017. (Def. Ex. A2, p. 2-4). Plaintiff claimed he first filed a grievance complaining about Defendant Wolfe's actions on March 23, 2017, but he had not received a response. The ARB denied the grievance since Plaintiff had not provided a response from his grievance officer, nor the Warden. (Def. Ex. A2, p. 4). Plaintiff was advised to contact his counselor. (Def. Ex. A2, p. 4).

Plaintiff's third grievance was dated July 23, 2017. While Plaintiff mentioned the incident with Defendant Wolfe, the focus of his grievance was medical care for chronic back pain. Both the grievance counselor and grievance officer denied the grievance on July 31, 2017. (Def. Ex. A3, p. 2, 4). The Warden also denied the grievance on November 28, 2017. (Def. Ex. A3, p. 4). Plaintiff appealed to the ARB which received his grievance on December 7, 2017.

Plaintiff also included a letter with this appeal complaining about the response to his grievance and the grievance procedures in general. However, Plaintiff made no mention of the incident with Defendant Wolfe. (Def. Ex. A3, p. 6).

The ARB ultimately found the July 23, 2017 grievance was not submitted within the required 60 day time frame because the alleged incident occurred four months before Plaintiff submitted his grievance. Furthermore, Plaintiff again provided no explanation for the delay. (Def. Ex. A3, p. 4).

Plaintiff's final grievance was dated August 4, 2017. (Def. Ex. A4, p. 2). Plaintiff again complained about Defendant Wolfe's actions. Plaintiff also claimed he filed a grievance on March 23, 2017, but he still not received a response. The counselor denied

3

the grievance on August 7, 2018, and Plaintiff appealed the denial directly to the ARB. The ARB noted Plaintiff had not completed the grievance process at his institutional by obtaining a response from the grievance officer and the Warden. (Def. Ex. A4, p. 4). In addition, the grievance was not timely submitted, and Plaintiff was reminded he had already submitted previous grievances on the same issue. (Def. Ex. A4, p. 4).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ruiz-Rivera v. Moyer,* 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). "As with any summary judgment motion, we review cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the nonmoving party." *Laskin v. Siegel,* 728 F.3d 7314, 734 (7th Cir. 2013) (internal quotation marks omitted).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he must do more than simply show that there is some metaphysical doubt as to the material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 261 (Brennan, J., dissenting) (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

## III. ANALYSIS

Defendants maintain Plaintiff cannot demonstrate he successfully exhausted his administrative remedies for his allegations before he filed his lawsuit on April 28, 2017. The Prison Litigation Reform Act (PLRA) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006); *Pozo,* 286 F.3d at 1025 (prisoner must file complaints and appeals "in the place, and at the time, the prison's administrative rules require").

If an inmate fails to follow the grievance procedure rules, his claims will not be considered to be exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo, v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002).

Defendants have adequately demonstrated Plaintiff failed to exhaust his administrative remedies for any of the four grievances appealed to the ARB. Plaintiff failed to timely appeal the denial of his April 27, 2017 grievance to the ARB. Plaintiff sent his May 31, 2017 grievance directly to the ARB without finishing the grievance procedure at Illinois River Correctional Center. The July 23, 2017 grievance did not pertain to the claims before this Court. Finally, Plaintiff did not complete the grievance procedure at his facility for the August 4, 2017 grievance and the ARB found it was not timely filed.

In response to the motion for summary judgment, Plaintiff says he did fully exhaust all available administrative remedies because the Defendants failed to respond to his first grievance filed on March 23, 2017, the day after his hand was injured. Plaintiff notes the grievance procedure is unavailable "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "In such cases, the prisoner is considered to have exhausted his administrative remedies." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016); *see also Turley v. Rednour*, 729 F.3d 645, 650 n. 3 (7th Cir. 2013) (collecting cases).

6

Plaintiff has not provided a copy of his March 23, 2017 grievance and he does not clarify the specific issues addressed in his grievance. Instead, Plaintiff says he filed his grievance the day after he went to the Health Care Unit. Plaintiff gave the grievance to a counselor, but Plaintiff is unable to provide the counselor's name. When Plaintiff did not receive a response by April 30, 2017, he asked another unidentified counselor about the status of his grievance. Plaintiff was told the March 23, 2017 grievance was forward to the Health Care Unit for a response. Only grievances complaining about the need for medical care are forwarded to medical staff. Therefore, based on Plaintiff's response, it is doubtful Plaintiff's initial grievance complained about the actions of Defendant Wolfe, or at the least, his March 23, 2017 grievance was not limited to one allegation concerning Defendant Wolfe's actions.

Plaintiff nonetheless admits he filed a second grievance on April 27, 2017 complaining about Defendant Wolfe slamming a door on his hand. Plaintiff makes no mention of his previous grievance, but Plaintiff does state he has "an open investigation on this officer for slamming my hand in the door on 2-D on 3-22-17…"[1] (Def. Ex. A1, p. 2).

The grievance officer's response specifically states it involves "Staff Conduct" concerning "CO Wolfe." (Def. Ex. A1, p. 3). The grievance counselor found Plaintiff's claims alleging Officer Wolfe "shut his hand in the door" are false, since the officer was not working in his housing unit on March 22, 2017. (Def. Ex. A1, p. 3). Therefore,

---

[1] Plaintiff claims this grievance was intended only to complain about ongoing problems with Defendant Wolfe, but Plaintiff also mentions the March 22, 201 incident in the document. In addition, the grievance officer clearly responded to both complaints even noting it was "2 grievances combined."(Def. Ex. A-1, p. 4).

7

Plaintiff's grievance was denied, and the officer further noted an "investigation into the claims has already been conducted and the inmate's claims were not substantiated." (Def. Ex. A1, p. 3). Therefore, Plaintiff was clearly informed the investigation was complete. The Warden joined in the denial of Plaintiff's grievance on August 4, 2017.

Even if Plaintiff had filed a previous grievance, he was provided with a final response on August 4, 2017. Plaintiff was then required to appeal that response to the ARB within 30 days, but Plaintiff chose not to send his grievance to the ARB until three months after the deadline on December 18, 2017.

Plaintiff did file a third grievance directly to the ARB on May 1, complaining that he had not received a response to his initial March 2017 grievance. Plaintiff was specifically advised to talk to his counsel about the previous grievance. As noted, Defendants then provided a clear and final response on a few months later on August 4, 2017, but Plaintiff failed to take the appropriate steps to complete the grievance process after he received the response.

It is possible Plaintiff's decision to file multiple grievances and combine more than one complaint in his grievances confused him. Nonetheless, the record before the Court is clear. Plaintiff received a response to his complaint concerning Defendant Wolfe, but Plaintiff did not timely file an appeal. Therefore, Plaintiff failed to complete the grievance procedure before filing his complaint and the motion for summary judgment is granted. [23].

**IT IS THEREFORE ORDERED:**

1) Defendant's motion for summary judgment on the issue of exhaustion of administrative remedies is granted pursuant to Federal Rule of Civil Procedure 56. [23]. The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff. The case is terminated, with the parties to bear their own costs.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *See also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED this 5th day of May, 2018.

s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE